group was not subject to rejection on double-patenting grounds. However, despite previously canceling previous claim 132 after a double patenting rejection over claims of the '017 patent, in each case Columbia presented argument only about why the new claims were not subject to double-patenting in view of the '216 patent. Because the claims about which Columbia presented these arguments were newly submitted, Columbia did not make its assertions about double-patenting in response to an examiner's rejection of claims; rather, Columbia made these statements preemptively, to deter the examiner from issuing double-patenting rejections.

60.  In asserting that the new claims in the '136 application (which led to the '275 patent) were not subject to double-patenting rejections over the '216 patent, Columbia misled the PTO by failing to draw the new examiner's attention to the claims of Columbia's other patents, and most significantly the '017 patent. The claims of the '017 patent, which provided the basis for double patenting rejections in 1998 by the examiner at that time, are substantially similar to the new claims Columbia added to the '136 application in June 2001 and could have provided a basis for a double-patenting rejection of the new claims.

61.  Columbia's statement that the new claims should not be rejected over the '216 patent, while failing to draw the examiner's attention to grounds for rejection over the '017 patent, was misleading because it implied that the '216 patent was the only basis upon which a double patenting rejection could be made. Moreover, in view of Columbia's statements in the July 24, 1998 Response conceding that the '017 patent relates to transformed CHO cells, Columbia was aware that the newly asserted claims, many of which were directed to transformed CHO cells, were vulnerable to double-patenting rejections over the '017 patent claims. Given the facts recited above, it is reasonable to infer that Columbia's misleading omission of Columbia's other issued patents, particularly the '017 patent, from its preemptive argument to

the new examiner was a deliberate and intentional effort to draw attention away from the other grounds on which the claims could be rejected for double-patenting and thus to mislead the examiner.

<u>Misleading Statements and Omissions Concerning '216 Patent</u>

62. Moreover, the very arguments that Columbia raised to head off double patenting rejections of the newly added claims were themselves substantially false, misleading and inconsistent with statements Columbia made to the PTO in order to secure the '216 patent. For example, Columbia stated that certain of the new claims were not vulnerable to double patenting rejections because "none of the claims of the '216 make obvious a recitation of 'linked' [DNA I and DNA II]." In fact, issued claim 54 of the '216 patent recites transforming a eukaryotic cell "with a molecule which is *formed by linking* one of said foreign DNA I molecules to a DNA II molecule."

63. As another example, Columbia stated that other of the newly added claims were not vulnerable to double patenting rejections because "none of the claims of the '216 make obvious a recitation that both DNA I and DNA II are amplified." However, issued claim 54 of the '216 patent (for example) recites transforming cells with a molecule formed by *linking* a DNA I to an *amplifiable* DNA II, and culturing the transformed cells under conditions "permitting survival or identification of eucaryotic cells which have acquired multiple copies of said amplifiable gene." Because DNA II is an amplifiable gene linked to DNA I, it is inherent in the claim that the end result is both amplified DNA I and amplified DNA II. Therefore, contrary to Columbia's assertion, claim 54 does indeed make obvious a recitation that both DNA I and DNA II are amplified.

64. In order to secure the '275 patent Columbia made statements concerning the '216 patent which were inconsistent with statements it made to the PTO during the prosecution of the

'216 patent. During the prosecution of the '275 patent, Columbia's counsel told the PTO that linked claims could not be made obvious by unlinked claims. For example, in the Amendment dated June 14, 2001, Columbia's counsel told the PTO that the new linked claims 137-141 were not subject to the obviousness-type double patenting rejection because unlinked claims of the '216 did not make obvious linked claims.

65. In an office action on the '136 application dated July 30, 2001, the examiner rejected a number of the newly added claims for, among other things, obviousness-type double-patenting over linked claim 73 of the '216 patent.

66. In response to this office action, in a paper filed January 30, 2002, Columbia again stated that the linked claims of the '136 application were not obvious in view of unlinked claims of the '216. These statements made by Columbia were in direct contradiction to statements it made during a prior litigation in which Columbia asserted the '216 patent against another party, Roche Diagnostics GmbH, where it stated that there was no patentable distinction between unlinked and linked claims and indeed that these claims were to one invention.

67. Additionally, like the June 14, 2001 Remarks, Columbia's January 30, 2002 statement that the new claims should not be rejected over the '216 patent, while failing to draw the examiner's attention to grounds for rejection over the '017 patent, was misleading because it implied that the '216 patent was the only basis upon which a double-patenting rejection could be made. Upon information and belief, Columbia presented these statements with intent to mislead the patent examiner. The '275 patent is therefore unenforceable due to inequitable conduct in its prosecution.

### B. Failure to Disclose Inconsistent Position In This Court at Same Time as Prosecuting the '275 Patent

68. At the same time as Columbia and its counsel were stating to the PTO that pending linked claims in the '136 application were not obvious in view of claims of unlinked claims of the '216 patent, they stated the opposite in the then-pending Roche Litigation that had been brought by Columbia (identified in paragraph 10 hereof). Columbia's lead trial counsel in the Roche Litigation was the same person who prosecuted the '275 patent.

69. The Roche Litigation was a patent infringement suit based on the Original Axel Patents. In that case, Columbia claimed that the defendant Roche Diagnostics, Inc. ("Roche") allegedly induced Genetics Institute ("GI"), a biotechnology company based in Cambridge, MA, to infringe the Original Axel Patents. Roche answered claiming that the Original Axel Patents were not infringed, invalid and/or unenforceable. As to unenforceability, Roche alleged that Columbia and John White, the attorney who prosecuted the '275 patent and the Original Axel Patents made false statements during the prosecution of the '216 patent with the intent to deceive the PTO.

70. Roche took the position, in the Roche Litigation, that John White, the attorney who prosecuted the '216 patent, intentionally misrepresented the reduction to practice date of the subject matter of linked claims 54-73 by mischaracterizing the inventors' Rule 131 declarations to the PTO. Because of this intentional material misrepresentation, two prior art references (Mantei *et al.* and Lai *et al.*) were no longer considered prior art, resulting in allowance of these linked claims.

71. At trial in this matter in July, 2001 Columbia and its counsel continued to state that there was no patentable distinction between unlinked and linked claims of the '216 patent.

72. Columbia and its counsel argued this lack of patentable distinction between unlinked and linked claims, at the same time as they were telling the PTO during the prosecution of the '275 patent, that unlinked and linked claims were patentably distinct, and thus unlinked claims of the '216 patent could not form the basis of an obviousness-type double patenting rejection for linked claims in the application leading to the '275 patent. Upon information and belief, Columbia presented these aforementioned statements as well as intentionally failed to disclose its trial testimony with an intent to mislead the patent examiner. The '275 patent is therefore unenforceable due to inequitable conduct in its prosecution.

73. In addition, at the same time as Columbia and its counsel were stating to the PTO that none of the claims of the '216 patent make obvious a recitation of glycoprotein, at trial in the Roche Litigation, Columbia's trial counsel, Mr. White, (who also prosecuted the '275 patent), was advancing the opposite position. Namely, he stated in regard to the Original Axel Patents, that "the breakthrough here has to do with being able to make functional glycoproteins in commercial quantities. That is at the heart of this invention -- I mean the significance of this invention." Upon information and belief, Columbia intentionally failed to disclose this trial testimony with an intent to mislead the patent examiner. The '275 patent is therefore unenforceable due to inequitable conduct in its prosecution for this additional reason.

### C. Failure to Disclose Rejection of Substantially Similar Claims in '159 Application

74. As set forth in paragraph 29 above, on June 7, 1995, Columbia filed two continuation applications relying on the original disclosure filed in February 1980. One of these applications matured into the '275 patent. The other, serial no. 08/477,159 ("the '159 application"), is still pending today.

75. The '159 application included claims directed to subject matter that is substantially similar to the subject matter claimed in the '275 patent. For example, claim 135 of the '159 application was substantially similar to issued claim 14 of the '275.

76. On April 29, 1997, the examiner then assigned to the '159 application issued an office action rejecting claims in the '159 application for double patenting over the '017, '216, and '665 patents, including claim 135. The claims were also rejected for failure to satisfy 35 U.S.C. § 112. Because these claims are substantially similar to claims that issued in the '275 patent, these rejections are highly material to the patentability of those claims.

77. Despite the materiality of the '159 application and the rejections of claims substantially similar to the '275 claims in April 1997, Columbia did not make the existence of the '159 application of record in the '275 prosecution until May 6, 2002, nearly *seven years* into the co-pendency of the two applications and a mere three months before allowance of the claims of the '275 patent. Even then, Columbia failed to disclose to the examiner the prior double-patenting rejections, by a different examiner in the '159 prosecution, of claims substantially similar to those in the '275 application. This contrary decision by another examiner was material to the patentability of the '275 claims.

78. Given the facts recited above, it is reasonable to infer that Columbia's unreasonable delay in disclosing the '159 application, as well as its failure to disclose the rejection of substantially similar claims by a different examiner in that case, was deliberate and intentional. Therefore, the '275 patent is unenforceable due to inequitable conduct in its prosecution.

### D. Failure to Disclose '636 Patent and Rejection of Substantially Similar Claims

79. As previously set forth, Columbia's '636 patent, which issued in 1992, was pending during the prosecution of several of the submarine applications that ultimately led to the

'275 patent. The claims of the '636 patent include claims directed to (a) processes for generating multiple copies of a foreign DNA I in eukaryotic cells and (b) product claims directed to eukaryotic and mammalian cells into which foreign DNA I has been introduced by the claimed processes. These product-by-process claims of the '636 patent overlap in scope with at least claim 5 of the '275 patent and its dependent claims. The '636 patent was prosecuted by the same law firm that prosecuted the '216 patent and its continuations and divisional applications (along with foreign counterparts, "'216 patent family"), including the '275 patent.

80. Columbia never disclosed the '636 patent to the examiner or made it of record during the prosecution of the '216 patent family, despite the fact that the '636 patent could have provided a basis for a double patenting rejection of various claims in the numerous applications that led to the '275 patent. Thus, the existence of the '636 patent was material to the patentability of claims Columbia prosecuted in the '216 patent family, including at least one claim that issued as part of the '275 patent.

81. The '636 file history includes rejections of claims that were substantially similar to claims that were then or later pending during prosecution of the '216 patent family, including the '275 patent. For example, claims 24 and 25 as originally filed in application 06/358,206 ("'206 application") (the parent application to which the '636 patent claims priority) are substantially similar to issued claim 5 of the '275 patent. Claims 24 and 25 of the '206 application were rejected in an office action dated April 15, 1983 as either anticipated by or obvious in view of a published international patent application in the '216 patent family. Similarly, in an office action dated June 3, 1986, the examiner rejected these same claims as anticipated by or obvious in view of the '216 patent itself. These rejections evidenced the closeness between the '216 patent family (which includes the '275 patent) and the claims

Columbia was seeking in prosecuting the '636 patent. Thus, it is highly likely that a patent examiner evaluating the claims proposed in the applications leading up to the '275 patent would have wanted to be informed of the rejection, by a different examiner, of claims asserted during prosecution of the applications leading up to the '636 patent. Those rejections are therefore material to the patentability of the claims asserted during the prosecution of the '216 patent family, including the claims that ultimately issued in the '275 patent.

82. Notwithstanding the more than *twenty years* between the filing of the application that led to the '636 patent and the issuance of the '275 patent, and the many information disclosure statements Columbia filed in the prosecution of the '216 patent family during that time period, Columbia failed to make the pendency, the issuance, or any part of the file history of the '636 patent of record in any of the applications that led to the issuance of the '275 patent.

83. As the owner of the '636 patent as well as the '275 patent, Columbia was aware of the materiality of the '636 patent and its file history to the '275 patent, as was its patent counsel, who prosecuted both the '636 and the '275 patents. Given the singular commercial and financial importance of the '216 patent family, it is reasonable to infer that Columbia's strategy for prosecuting that patent family and, in particular, the applications leading up to the '275 patent, did not arise from inattentiveness or accident. Given the facts recited above, it is also reasonable to infer that Columbia's failure to disclose the '636 patent or its file history during the prosecution of the '216 patent family was deliberate and intentional. Therefore, the '275 patent is unenforceable due to inequitable conduct in its prosecution.

### E. Failure to Disclose Statements to Congress Inconsistent With Positions Taken Before the PTO

84. As previously set forth in paragraphs 26-29, as the expiration date of the '216, '665, and '017 patents loomed, Columbia attempted to secure from Congress an extension on its

monopoly over the technology claimed in the '216 patent. In its attempt, Columbia made numerous statements to Congress that were inconsistent with positions it took in its concurrent prosecution of the '275 patent claims in the PTO. For example, Columbia emphasized the breadth and pioneering scope of the '216 patent. Indeed, Columbia told Congress that its patent broadly claimed both "cotransformed cells and the process of making them." In its statements to the PTO, on the other hand, Columbia argued that the scope of the '216 patent was much more limited. Columbia never disclosed to the PTO during prosecution of the '275 patent the inconsistent representations it made to Congress in 2000, in violation of its duty of candor to the PTO under 37 C.F.R. § 1.56.

85.   Columbia also made inconsistent representations to Congress and the PTO on narrower issues. For example, Columbia told Congress that the '216 patent covered both what is known as "linked" cotransformation as well as what is known as "unlinked" cotransformation. With respect to linked cotransformation, Columbia told Congress that under the '216 patent, "[t]he genes of interest can be joined together in a single DNA construct prior to their introduction into the cell of interest." Columbia also asserted to Congress that "[t]he Cotransformation process [claimed in the '216 patent] permit[s] the . . . amplification of the gene of interest for the purpose of expressing large amounts of the protein it encoded."

86.   In prosecuting the '275 patent, by contrast, Columbia characterized the claims of the '216 patent far more narrowly. For example, as set forth above in paragraph 56, Columbia stated, in June 14, 2001 and January 30, 2002 responses to office actions, that "none of the claims of the '216 make obvious a recitation of 'linked' [DNA I and DNA II]." Columbia also stated that "none of the claims of the '216 make obvious a recitation that both DNA I and DNA II are amplified." These statements were made to avoid obviousness-type double-patenting

rejections over the '216 patent and were meant to persuade the examiner to read the '216 patent's claims with a narrow scope.

87. Thus, Columbia's assertions to Congress of the sweeping breadth of the '216 patent directly contradict its exhortations to the examiner of the '275 patent to read the '216 patent narrowly. Columbia never disclosed its statements to Congress to the PTO or advised the examiner that it had ever taken contrary positions as to the scope of the '216 claims. It may reasonably be inferred from these facts that Columbia's omission to disclose these inconsistent statements to the PTO was deliberately misleading. The '275 patent is therefore unenforceable for inequitable conduct.

## COUNT V:  DECLARATION OF NONINFRINGEMENT OF THE '275 PATENT

88. Plaintiffs incorporate all prior paragraphs of this complaint.

89. Plaintiffs are entitled to and seek a declaratory judgment that the '275 patent is not infringed because Serono does not engage in any activity that infringes the '275 patent.

90. There is an actual controversy between plaintiffs and Columbia concerning the validity of the '275 patent.

## COUNT VI:  DECLARATION OF UNENFORCEABILITY OF THE '275 PATENT DUE TO LACHES AND/OR ESTOPPEL

91. Plaintiffs incorporate all prior paragraphs of this complaint.

92. Columbia prior conduct has precluded the assertion of the '275 patent against plaintiffs.

93. There is an actual controversy between plaintiffs and Columbia concerning the validity of the '275 patent.

## COUNT VII:  DECLARATION OF NONINFRINGEMENT OF THE '275 PATENT DUE TO COLUMBIA'S CONDUCT

94. Plaintiffs incorporate all prior paragraphs of this complaint.

95. Plaintiffs are entitled to and seek a declaratory judgment that the '275 patent is not infringed because Columbia's prior conduct has estopped Columbia from asserting infringement of the claims of the '275 patent against plaintiffs

96. There is an actual controversy between plaintiffs and Columbia concerning the validity of the '275 patent.

### COUNT VIII: DECLARATION OF UNENFORCEABILITY OF THE '275 PATENT DUE TO PATENT MISUSE

97. Plaintiffs incorporate all prior paragraphs of this complaint.

98. Columbia has demanded that Serono pay royalties under the License Agreement for activities occurring in the U.S. after August 16, 2000, the expiration of the Original Axel Patents. Columbia's effort to extract additional royalties based upon these patents after their expiration constitutes patent misuse.

99. The '275 patent has an identical disclosure and derives from the same application chain as the Original Axel Patents. In addition, as detailed above, the claims of the '275 patent are not patentably distinct from the claims of these earlier patents. Columbia's demand for payment of royalties based on the '275 patent is part and parcel of its effort to extend its patent monopoly beyond its lawful statutory term.

100. In addition, Columbia unlawfully conspired with other parties to prevent full and unfettered licensing of the Axel patents, in contravention of Columbia's agreement with the NIH, as described *supra;* see *e.g.* Paragraph 2 *supra.*

101. Serono is entitled to and seeks a declaratory judgment that the '275 patent is unenforceable due to patent misuse.

102. There is an actual controversy between plaintiffs and Columbia concerning the validity of the '275 patent.

## COUNT IX:  DECLARATION OF EXCEPTIONAL CASE

103.  Plaintiffs incorporate all prior paragraphs of this complaint.

104.  Plaintiffs are entitled to and seek a declaratory judgment that this is an exceptional case under 35 U.S.C. § 285 and that they are entitled to an award of reasonable attorneys' fees, costs, and expenses.

## REQUESTS FOR RELIEF

For the reasons set forth above, and for such other reasons that may be presented at trial, plaintiffs seek the following relief:

    a.    Judgment for plaintiffs against Columbia on all counts of this complaint;

    b.    Declarations that plaintiffs have no obligation to pay further royalties to Columbia under the License Agreements;

    c.    Declarations that no conduct of Serono infringes the '275 patent on the grounds set forth above;

    d.    Declarations of invalidity and unenforceability of the '275 patent on the grounds set forth above;

    e.    Preliminary injunctive relief prohibiting the enforcement of the License Agreements during the pendency of this action;

    f.    Permanent injunctive relief prohibiting Columbia from demanding any further royalties under the License Agreements based on the '275 patent or on any pending continuations, continuations-in-part, or divisional applications of the patents recited in those agreements;

    g.    A declaration that this is an exceptional case under 35 U.S.C. § 285;

    h.    An award of reasonable attorneys' fees, costs, and expenses; and

    i.    Such other or further relief that the Court deems just.

Dated: November 26, 2003

        SERONO, INC. and
        ARES TRADING, S.A.

        By its attorneys,

        */s/ Cornelius J. Moynihan, Jr.*
        Cornelius J. Moynihan, Jr., P.C. (BBO # 358840)
        Fred A. Kelly, Jr. (BBO # 544046)
        Nicholas G. Papastavros (BBO # 635742)
        NIXON PEABODY LLP
        101 Federal Street
        Boston, MA 02110-1832
        (617) 345-1000 (phone)
        (617) 345-1300 (facsimile)

Of Counsel:
Peter F. Felfe (PF4481)
John A. Bauer (JB7467)
Bruce Koch (BK6908)
Leon Medzhibovsky (LM9554)
Attorneys for Plaintiffs:
SERONO, INC. and
ARES TRADING, S.A.